JONES, Justice.
The Issue: Whether, in accordance with Ala.Code 1975, § 37-3-1, et seq. (Motor Vehicle Carriers Act), and the tariff filed thereunder, Pony Express Courier Corporation (“Pony Express”), as a commodity carrier pursuant to an Alabama Public Service Commission (“APSC”) motor carrier certificate, is liable to Security Bank & Trust Company (“SB & T) for loss by theft of federal food stamps, shipped by SB & T in Arab, Alabama, to the Federal Reserve Bank in Birmingham, when such loss occurred without fault on the part of the carrier.[1] We answer the question in the *499 affirmative and reverse the judgment of the trial court, which absolved the carrier of liability.
The Facts: The facts essential to our resolution of the issue presented are contained in the stipulation of the parties: “[Pony Express] picked up the bag marked ‘one bag cancelled food coupons’ from the Security Bank & Trust Co. at Arab, December 28, 1984, and did not deliver it to the Federal Reserve.” The issue of negligence was resolved in a jury trial in favor of Pony Express, and the trial court, sitting without a jury, resolved the remaining issues, including a breach of contract claim, in favor of Pony Express. The pertinent part of the trial court’s order reads as follows:
“[I]t is the opinion of the court that, though the parties may alter their relationship by contract, the defendant here did not agree to become an absolute insurer regardless of duty or breach.”
The Carrier’s Contentions: The primary argument of Pony Express in support of the trial court’s holding is that the case is governed by the general law of bailment. Thus, where the jury found in its favor on the issue of negligence, says Pony Express, the application of the law of bailment, which imposes on the bailee the duty of due care, absolves it of all liability for the loss by theft of SB & T’s food stamps. This argument (and the trial court’s holding), however, overlooks the liability provision of the “tariff” filed with APSC by Pony Express pursuant to its “Certificate of Public Convenience and Necessity No. 2171.” In keeping with statutory and regulatory guidelines, Item 25B of the tariff filed by Pony Express reads as follows:
"For the transportation of:
"Original and copy source documents, used paper, punch tapes, processing magnetic tapes, used punch cards, used magnetic ink, recognition data and other such business records and accounting data media of all kinds, excluding plant removals; processed film and prints, complimentary replacement film, not for resale; incidental dealer handling supplies, limited to labels, envelopes, packaging material and advertising literature
“The Carrier will assume liability for the safekeeping and delivery of the shipment from the time the same is received until delivered to the consignee designated by the Shipper, or in the event that such delivery cannot be made for any reason, until it is returned by the Carrier to the Shipper.” being returned therewith, television exhibition; all to be moved only in a station wagon, panel truck, or other such vehicle not to exceed one ton rated load capacity, between all points and places in the State of Alabama. “Cash letters and related items moving therewith, between all points and places in the state of Alabama.
Pony Express attempts to escape the operative effect of its tariff’s imposition of liability on two grounds: 1) Because its APSC certificate does not in express terms specify “food stamps,” it argues that its contract with SB & T for the transportation of this item falls outside the provisions of the certificate and its tariff filed thereunder; and 2) the stipulation of the parties did not include an agreement “as to the value of the cancelled food coupons in question.”
The Decision: We find no merit in either of these contentions. We refuse to take seriously Pony Express’s admission that it illegally transported these food stamps, as a defense to the shipper’s claim of liability. The established fact is that it did transport these food stamps under a certificate that authorized the transporting of “cash letters.” [2] Neither the certificate, the tariff, nor the evidence of record contains a definition of the term “cash letters.” We will assume, therefore, that, because both shipper and carrier were acting in contemplation of a lawful operation, the transporting of these food stamps falls within the definition of “cash letters.”
Pony Express seizes upon the word “can-celled” in the phrase “cancelled food cou *500 pons,” in support of its “no evidence of value” contention. It is obvious from the evidence that “cancelled” refers to the redemption of the coupons (stamps) by the recipient/customer in exchange for certain authorized food items at the retail food store. Upon “deposit,” the bank then credits the value of the stamps to the food retailer’s account. Not until their receipt by the Federal Reserve Bank are the stamps converted into cash and credited to the depositing bank’s account. Here, the evidence is without dispute that the failure of Pony Express to transport the food stamps to the Federal Reserve Bank resulted in a $9,200 net loss to SB & T.
*499 "Any matter contained herein which is or may become the subject of controversy will be governed by the certificate of permit of authority as described in the orders within the official files of the Alabama Public Service Commission.”
*500 Alternatively, Pony Express argues that, in the event its tariff is applicable to the claimed loss, its liability is limited by the express terms of the tariff. While we agree that its liability is so limited, we find that the limitation applicable to this loss is $25,000, as set forth in Item 27 of the tariff.
REVERSED AND REMANDED.
TORBERT, C.J., and SHORES, ADAMS and STEAGALL, JJ., concur.

. The fact that the claimed loss resulted from a theft is undisputed. Copies of court records introduced at trial disclose that the Federal Bureau of Investigation apprehended a suspect who was convicted and sentenced to imprisonment for the theft of the subject property. The *499 record of the instant trial further discloses that SB & T never received the stolen food stamps.

. The certificate also included: